USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __9/30/2020__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Larisa Ivanovna Markus,<br><br>     Debtor in a Foreign Proceeding. | **ORDER** |
| Larisa Ivanovna Markus,<br><br>     Appellant,<br><br>  -against-<br><br>Yuri Vladimirovich Rozhkov,<br><br>     Appellee. | 19 Civ. 10129 (AT) |
| LM Realty 31B, LLC, LM Realty 27D, LLC, LM Realty 24C, LLC, LM Realty 23H, LLC, LM Realty 20A, LLC, LM Realty 18 West, LLC, The Larisa Markus Revocable Trust, The Larmar Foundation, Protax Services Inc., Protax Consulting, Inc., Ilya Bykov, First Integrated Construction, Inc., Innovative Construction Group, Inc.,<br><br>     Appellant,<br><br>  -against-<br><br>Yuri Vladimirovich Rozhkov,<br><br>     Appellee. | 19 Civ. 10363 (AT)<br><br>Chapter 15<br><br>19 Bk. 10096 (MG) |

ANALISA TORRES, District Judge:

   Before the Court are two related appeals, the first brought by Larisa Ivanova Markus

("Markus"), and the second brought collectively by LM Realty 31B, LLC; LM Realty 27D,

LLC; LM Realty 24C, LLC; LM Realty 23H, LLC; LM Realty 20A, LLC; LM Realty 18 West,

LLC; The Larisa Markus Revocable Trust; The Larmar Foundation; Protax Services Inc.; Protax

Consulting, Inc.; Ilya Bykov; First Integrated Construction, Inc.; and Innovative Construction Group, Inc. (collectively, the "LM/Protax Entities," and collectively with Markus, "Appellants"). Appellants separately appeal from an Opinion and Order issued on October 23, 2019 (the "October 2019 Order") by the Honorable Martin Glenn, a judge of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). *In re Markus*, 610 B.R. 64 (Bankr. S.D.N.Y. 2019). The October 2019 Order granted Appellee Yuri Vladimirovich Rozhkov's (the "Foreign Representative") emergency motion to enforce a recognition order and entrust assets of the Larisa Markus Revocable Trust to the administration of the Foreign Representative (the "Turnover Motion"). *Id*. at 68. Additionally, the October 2019 Order denied the LM/Protax Entities' cross-motion to vacate a May 29, 2019 order, Bankr. Dkt., ECF No. 57, which prohibited the LM/Protax Entities from transferring proceeds from the sale of Markus' property in the United Kingdom, and a July 30, 2019 order, Bankr. Dkt., ECF No. 105, which prohibited the removal of funds from an escrow account containing proceeds of the Larisa Markus Revocable Trust.[1] *See In re Markus*, 610 B.R. at 71.

For the reasons stated below, the October 2019 Order is AFFIRMED. Accordingly, the LM/Protax Entities' request for an order permitting the transfer of certain funds and the removal of restraints on those entities is DENIED.

## BACKGROUND

The following facts are taken from the October 2019 Order and are uncontested unless otherwise noted. This case concerns a Chapter 15 proceeding, which permits in part a foreign representative to petition a United States court for recognition of a foreign main proceeding against a debtor. 11 U.S.C. § 1515. On January 1, 2019, the Foreign Representative brought the

---

[1] In this Opinion, the docket in No. 19 Bk. 10096 is referred to as the "Bankr. Dkt."

instant Chapter 15 proceeding against Markus.  Markus, the foreign debtor, is serving a prison sentence in Russia arising from her conviction for embezzlement of two billion dollars from the Foreign Economic Industrial Bank, Ltd., a Russian entity.  *In re Markus*, 610 B.R. at 69.

On April 19, 2016, Bank VTB 24, a creditor of Markus, initiated a Russian insolvency proceeding against her.  *Id*. at 68.  On May 25, 2017, the Moscow Arbitrazh Court (the "Moscow Court") issued a judgment determining that there was no evidence that Markus was eligible for a restructuring of debts and that there was evidence that Markus was bankrupt.  *Id*.  Accordingly, the Moscow Court initiated a procedure to liquidate her assets.  *Id.*  In that judgment, the Moscow Court appointed the Foreign Representative as Markus' financial administrator to preside over the liquidation.  *Id*.

On April 1, 2019, the Honorable Mary Kay Vyskocil, then a Bankruptcy Court judge, issued an order granting the Foreign Representative's motion for recognition of a foreign main proceeding.  *Id.* at 68.  Under § 1520 of the Bankruptcy Code, an order recognizing a proceeding as a foreign main proceeding has the effect of, among other things, staying actions against the property of a debtor within the jurisdiction of the United States.  11 U.S.C. § 1520.  As a result, any party that transferred Markus' property in the United States would be in violation of the stay and any such transfer would be void.  *In re Markus*, 610 B.R. at 68.  In an order dated October 8, 2019, the Honorable Martin Glenn denied Markus' motion to vacate the recognition order granted by Judge Vyskocil.  *Id.*

Over the course of the proceedings below, the Foreign Representative learned that Markus had several million dollars in assets in the United States in the Larisa Markus Revocable Trust (the "LM Trust"), a revocable trust governed by New York law that Markus established in 2011.  *Id.* at 69.  Markus and her accountant, Ilya Bykov, a New York resident, are co-trustees of

the LM Trust.  *Id.*  Markus gave Bykov a power-of-attorney.  *Id.*  He operates the LM/Protax

Entities, which opposed the Turnover Motion before the Bankruptcy Court.  *Id.*

In an unsigned letter dated May 20, 2019, from JPC Law (apparently a U.K. law firm

representing Markus) to the Foreign Representative, JPC Law stated that Markus' U.K. real

property was sold for over five million dollars (the "U.K. Proceeds"), and that the U.K. Proceeds

were transferred to the LM Trust's account at JP Morgan Chase in New York.  *Id.* at 69.  On

May 24, 2019, Bykov allegedly transferred three million dollars of the U.K. Proceeds from that

account to the Citibank account of 550 Park Avenue, LLC ("550 Park Avenue"), another

Markus-owned entity.  *Id.*  On May 27, 2019, upon learning of the transfer, the Foreign

Representative executed a document purportedly revoking the LM Trust (the "First

Revocation").  *Id.* at 70.  The First Revocation was signed by the Foreign Representative, but

was not witnessed.  *Id.*

By email dated May 28, 2019, the Foreign Representative notified Judge Vyskocil of the

sale of the U.K. property and submitted the Turnover Motion.  Bankr. Dkt., ECF No. 81-12.  The

Foreign Representative sought an emergency order confirming the revocation of the LM Trust,

and authorizing the Foreign Representative to administer, and prohibiting others from

transferring, its assets.  *Id.*  On May 29, 2019, Judge Vyskocil entered an order directing Daniel

A. Singer, Bykov's lawyer, to disclose the location of the U.K. Proceeds and prohibiting any

further transfer of those proceeds.  *Id.* at 70.  That same day, Singer filed a letter stating that

"monies pertaining to the sale of the referenced property in the United Kingdom are currently in

the Larisa Markus Revocable Trust Account at Chase [and] in an account titled 550 Park

Avenue, LLC, at Citibank."  *Id.*

On September 8, 2019, while the Turnover Motion was pending, the Foreign Representative executed a second document revoking the LM Trust (the "Second Revocation"). *Id*. The Second Revocation was signed by the Foreign Representative and two witnesses. *Id*.

The October 2019 Order granted the Foreign Representative's Turnover Motion:  (i) confirming the Foreign Representative's revocation of the LM Trust; (ii) concluding that the Turnover Motion could be properly resolved without an adversary proceeding or an evidentiary hearing because there were no disputed issues of material fact; and (iii) ordering the turnover to the Foreign Representative of the U.K. Proceeds held in New York bank accounts controlled by the LM Trust and 550 Park Avenue. *Id*. at 68.

## DISCUSSION

I.    Jurisdiction and Legal Standard

Pursuant to 28 U.S.C. § 158(a), district courts have appellate jurisdiction over final judgments of bankruptcy courts.  Findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*.  *In re Bennett Fundings Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998) (citations omitted).  Mixed questions of law and fact are reviewed *de novo*.  *In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003).  Evidentiary rulings are reviewed for an abuse of discretion.  *In re Sterling*, 565 B.R. 258, 269 (Bankr. S.D.N.Y. 2017).

II.    Analysis

In their separate appeals, Appellants seek reversal of several aspects of the October 2019 Order. [2]  Markus and the LM/Protax Entities both challenge the Bankruptcy Court's conclusion that the Foreign Representative properly revoked the LM Trust under New York law.  *See* Markus Mem. at 1, Markus Appeal Dkt., ECF No. 9; LM/Protax Mem. at 12–22, LM/Protax

---

[2] In this Opinion, the docket in No. 19 Civ. 10129 is referred to as the "Markus Appeal Dkt.," and the docket in No. 19 Civ. 10363 is referred to as the "LM/Protax Appeal Dkt."

Appeal Dkt., ECF No. 21.  Markus alone challenges the Bankruptcy Court's determination that the Foreign Representative was authorized to revoke the LM Trust under Russian law, and the Bankruptcy Court's decision not to hold an evidentiary hearing on the Turnover Motion.  *See* Markus Mem. at 1.  Separately, the LM/Protax Entities ask this Court to permit funds transferred to the Foreign Representative pursuant to the October 2019 Order to be transferred to Daniel A. Singer's escrow account, and to lift restraints on the LM/Protax Entities' use of such funds. LM/Protax Mem. at 22–23.

### A.  Trust Revocation Under New York Law

The Bankruptcy Court concluded that the Foreign Representative complied with New York law in exercising Markus' right as grantor to revoke the LM Trust.  *In re Markus*, 610 B.R. at 82–83.  This is a question of law that this Court reviews *de novo*.  *In re Bennett Fundings Grp.*, 146 F.3d at 138.  The Bankruptcy Court held that the LM Trust was expressly revocable under Section 11 of the Larisa Markus Revocable Trust agreement dated February 14, 2011, between Larisa Markus as grantor and Larisa Markus as trustee (the "Trust Agreement").[3] Bankr. Dkt., ECF No. 81-12.  Next, the Bankruptcy Court found that the Second Revocation was witnessed by two persons and, therefore, complied with Section 11 of the Trust Agreement and the formal requirements of the New York Estates Powers and Trusts Law ("EPTL") § 7-1.17(a), the New York statute governing revocation of trusts.[4]  *In re Markus*, 610 B.R. at 82–83.  The

---

[3] On April 15, 2011, the Trust Agreement was amended to include Bykov as a trustee.  Bankr. Dkt., ECF No. 81-12.
[4] Because the construction of the statute is relevant to this discussion, the Court provides the entire text of EPTL § 7-1.17:

(a)  Every lifetime trust shall be in writing and shall be executed and acknowledged by the person establishing such trust and, unless such person is the sole trustee, by at least one trustee thereof, in the manner required by the laws of this state for the recording of a conveyance of real property or, in lieu thereof, executed in the presence of two witnesses who shall affix their signatures to the trust instrument.

(b)  Any amendment or revocation authorized by the trust shall be in writing and executed by the person authorized to amend or revoke the trust, and except as otherwise provided in the governing instrument,

Bankruptcy Court also concluded that, even though the Second Revocation was not notarized, it was not defective because EPTL § 7-1.17 does not require notarization. *Id.* at 83. Additionally, the Bankruptcy Court determined that, although there was no evidence that the Foreign Representative served the Second Revocation on Bykov, in person or by registered mail, such failure did not affect its validity or the date upon which the revocation took effect, pursuant to EPTL § 7-1.17. *Id.* Finally, the Bankruptcy Court held that the Second Revocation was effective as of the date of the First Revocation, even though it was not witnessed, because "[s]ubstantial compliance with the requirements of revocation had already occurred, and the Second Revocation makes clear that no fraud or other suspicious circumstances attended [the] Foreign Representative's effort to revoke the LM Trust." *Id.* at 70 & n.2. Although the Court agrees with Appellants that both revocations failed to comply with Section 11 of the Trust Agreement, the Court nevertheless finds that the Second Revocation was valid for the reasons discussed below.

During the Bankruptcy Court proceedings, Markus did not oppose the Turnover Motion on the ground that the Foreign Representative failed to properly revoke the LM Trust under New York law.[5] *See generally* Markus Opp., Bankr. Dkt., ECF No. 127. At that stage of the litigation, the LM/Protax Entities attacked the validity of the First Revocation, arguing that the Foreign Representative failed to meet the New York law requirements that it be executed and

shall be acknowledged or witnessed in the manner required by paragraph (a) of this section, and shall take effect as of the date of such execution. Written notice of such amendment or revocation shall be delivered to at least one other trustee within a reasonable time if the person executing such amendment or revocation is not the sole trustee, but failure to give such notice shall not affect the validity of the amendment or revocation or the date upon which same shall take effect. No trustee shall be liable for any act reasonably taken in reliance on an existing trust instrument prior to actual receipt of notice of amendment or revocation thereof.

EPTL § 7-1.17.
[5] In the Bankruptcy Court, Appellants separately opposed the Turnover Motion.

acknowledged in the same manner as conveyances of real property, pursuant to New York Real

Property Actions & Proceedings Law ("RPAPL") § 301 and RPAPL § 301-a, and signed before

two witnesses, in accordance with EPTL § 7-1.17.  LM/Protax Opp. ¶ 32 & n.8, Bankr. Dkt.,

ECF No. 125.  The LM/Protax Entities did not contend that the First Revocation violated Section

11 of the Trust Agreement or that the Foreign Representative failed to serve Bykov.

 Both Markus and the LM/Protax Entities now raise a new argument—that the LM Trust

was not actually revoked because the First and Second Revocations did not comply with two

provisions of the Trust Agreement: (1) Section 11, which mandates acknowledgement of the

revocation instrument, and (2) Section 22, which states that New York law governs, compelling

the conclusion that the acknowledgement must satisfy the formalities pertaining to the

acknowledgment of real property conveyances under New York Real Property Law § 301 and §

301-A.  *See* Markus Mem. at 27–38; LM/Protax Entities Mem. at 12–22.  Separately, the

LM/Protax Entities contend that the revocation was defective because the Foreign Representative

failed to satisfy Section 11's requirement to serve Bykov, the co-trustee.  LM/Protax Mem. at 20.

 The Court need not address these arguments because Appellants did not propound them

in the Bankruptcy Court.  "Any arguments not raised in the bankruptcy court are considered

waived; unless such waiver results in manifest injustice, the new arguments will not be

considered on appeal."  *In re Gordon*, 577 B.R. 38, 47 (Bankr. S.D.N.Y. 2017).  Indeed,

Appellants cannot "change [their] strategy on appeal."  *In re Campbell*, 539 B.R. 66, 74 (Bankr.

S.D.N.Y.  2015) (finding that, "[a]ppellant, having chosen before the bankruptcy court to rely on

[a] theory . . .  is not free to change that strategy on appeal" (alteration in original)).  And

"circumstances normally do not militate in favor of an exercise of discretion to address new

arguments on appeal where those arguments were available to the parties below and they proffer

no reason for their failure to raise the arguments below." *U.S. ex rel. Maurice Keshner v. Nursing Personnel Home Care*, 794 F.3d 232, 234 (2d Cir. 2015) (internal quotation marks omitted).

In the Bankruptcy Court, Markus did not complain that the First Revocation failed to meet the requirements of Section 11. *See* Markus Opp. at 4–18. Tellingly, Markus' reply brief on appeal does not respond to the Foreign Representative's contention that this argument has been waived. *See generally* Markus Reply, Markus Appeal Dkt., ECF No. 26. Indeed, Markus provides no justification for her silence in the Bankruptcy Court. *Id.*

Similarly, the LM/Protax Entities made no mention of Section 11 in their opposition to the Turnover Motion. LM/Protax Entities Opp. ¶ 32. The LM/Protax Entities now claim that they raised this issue before the Bankruptcy Court, but the only evidence they point to is their argument that the Foreign Representative's revocation failed to comply with New York law. LM/Protax Reply at 5–6, LM/Protax Appeal Dkt., ECF No. 31.

Even if the Court were to consider these arguments, the Court would find that the Second Revocation properly revoked the LM Trust, despite the absence of an acknowledgment and the failure to serve Bykov. Under New York law, "the terms of the trust setting forth the procedure for revocation must be complied with before the statute comes into play." *See In re Dodge's Tr.*, 250 N.E.2d 849, 857 (N.Y. 1969); *Whitehouse v. Gahn*, 84 A.D.3d 949, 951 (N.Y. App. Div. 2011); *Matter of Goetz*, 793 N.Y.S.2d 318, 322 (Surr. Ct. 2005). "The trust instrument is the first authority on how amendments to lifetime trusts may be made. Th[e] statute governs only if the trust is silent." EPTL § 7-1.17 cmt. 2005 (McKinney 2010). Here, Section 11 of the Trust Agreement provides:

> The Grantor, by instrument signed, acknowledged and delivered to the Trustee,
> reserves the right to revoke, or from time to time, amend or alter, in whole or in

> part, this Agreement or any Trust created hereunder.  Such instruments of
> revocation, amendment or alteration shall be served upon the Trustee, either by
> delivering the same to them in person or by registered mail.  The Trustee shall
> make, execute and deliver such releases or other instruments as the Grantor may
> require for herself or for any other person or corporation, and in so doing shall not
> incur any liability whatsoever for its action in this regard.

Thus, contrary to the Bankruptcy Court's assumption, *see In re Markus*, 610 B.R. at 82–83, the

Trust Agreement, not the statute, governs revocation.  *See In re Dodge's Tr.*, 250 N.E.2d at 857

("[T]he terms of the trust setting forth the procedure for revocation must be complied with before

the statute comes into play."); *see also* EPTL § 7-1-1.7.

Despite Section 11's mandate that the revocation instrument be acknowledged and served

upon the trustee, the Court agrees with the Bankruptcy Court's conclusion that the Second

Revocation was proper, and dates back to the date of the First Revocation.  First, New York state

courts have found that the lack of a proper acknowledgment does not necessarily cause a trust

disposition to fail, particularly where, as here, there are other "sufficient indicators of

authenticity."  *Bullock v. Clarke*, No. 2001/1568, 2002 WL 31119931, at *1 (N.Y. Sup. Ct. Sept.

10, 2002); *see Matter of Estate of O'Brien*, 627 N.Y.S.2d 544, 547 (Surr. Ct. 1995) (finding that

lack of an acknowledgement did not invalidate bequest); *In re Klosinski*, 746 N.Y.S.2d 350,

360–62 (Surr. Ct. 2002) ("Indeed, if there is sufficient evidence of compliance with the statute,

the defect in the acknowledgement may be ignored unless there is a showing of prejudice."); *see

also In re Marcus Trs.*, 2 A.D.3d 640, 641 (N.Y. App. Div. 2003) (finding that, even though

trust instrument lacked a signature, the "essential elements" of a trust were present).

Importantly, the Foreign Representative sought to revoke the LM Trust as a court-appointed

financial administrator, and did so after the Bankruptcy Court's recognition of a foreign main

proceeding.  *See In re Markus*, 620 B.R. at 69.  Additionally, the Court finds it instructive, even

if not dispositive, that EPTL § 7-1.17 does not require notarization in order to properly revoke a lifetime trust.  *See* EPTL § 7-1.1.7.

Second, the Foreign Representative's failure to serve Bykov does not affect the validity of the Second Revocation.  Under Section 11 of the Trust Agreement, service on the trustee is not a precondition of its revocation.  This reading tracks EPTL § 7-1.17, which explicitly states that "failure to give . . . notice" of a revocation "shall not affect the validity of the . . . revocation."  EPTL § 7-1.17.   Moreover, there is no question that Bykov, as co-trustee, was provided notice of the revocation within one day of the First Revocation.  *See* Turnover Mot. at 1, Bankr. Dkt., ECF No. 81.  Therefore, Bykov was not prejudiced by the lack of service.

Accordingly, the Bankruptcy Court's holding that the Foreign Representative's revocation of the LM Trust complied with New York law is AFFIRMED.

> B.   Trust Revocation Under Russian Law

The Bankruptcy Court concluded that the Foreign Representative had the authority to revoke the LM Trust under Russian law.  In making this determination, it reviewed various sources, including the First Sokolov Declaration, Bankr. Dkt., ECF No. 5, the Nelly Declaration, Bankr. Dkt., ECF No. 153, the Second Sokolov Declaration, Bankr. Dkt., ECF No. 133-4, and various provisions of Russian law.  *In re Markus*, 610 B.R. at 81–82.  "Determinations of a foreign country's law is an issue of law," which this Court reviews *de novo*.  *In re Tyson*, 433 B.R. 68, 78 (S.D.N.Y. 2010) (internal quotation marks omitted).   The Court finds, however, that Markus has waived this issue because she did not bring it up in the Bankruptcy Court.

Markus offers no explanation for her failure to pursue this argument below.  Further, the LM/Protax Entities raised this argument before the Bankruptcy Court, but they have not appealed that portion of the Bankruptcy Court's decision.  "[A]rguments not made in an appellant's

11

opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief." *R.R. v. Scarsdale Union Free Sch. Dist.*, 366 Fed. App'x 239, 242 (2d Cir. 2010) (internal quotation marks omitted).

Accordingly, the Bankruptcy Court's determination that the Foreign Representative was authorized to revoke the LM Trust under Russian law is AFFIRMED.

### C. Evidentiary Hearing

"Bankruptcy courts have the discretion to decide an issue without holding an evidentiary hearing, and a district court can reverse such a decision only if it amounts to an abuse of discretion." *In re Gordon*, 577 B.R. at 49. Moreover, a "bankruptcy court does not abuse its discretion in reaching a decision without holding an evidentiary hearing where the record provided ample evidence on which the court could make such a decision." *Id.* (internal quotation marks omitted). "It is unnecessary to conduct an evidentiary hearing on a contested matter unless there are disputed issues of material fact that a Bankruptcy Court cannot decide based on the record." *In re AMR Corp.*, 490 B.R. 470, 479 (S.D.N.Y. 2013). And where "the core facts are not disputed, the bankruptcy court is authorized to determine contested matters . . . on the pleadings and arguments of the parties, drawing necessary inferences from the record." *Id.* (internal quotation marks omitted).

The Court finds that the Bankruptcy Court's decision to not hold an evidentiary hearing on the Turnover Motion was not an abuse of discretion. The Court agrees with the Bankruptcy Court's determination that Markus failed to put forward evidence demonstrating that the Bankruptcy Court's refusal to hold such a hearing did not "sufficiently protect[]" the interests of Markus. *See* 11 U.S.C. § 1522(a) (requiring a court to ensure that the interests of creditors and interested parties, including the debtor, are sufficiently protected). As noted by the Bankruptcy

Court, Markus' attorney, Victor Worms, provided no evidence for his claim that the "Chapter 15 proceeding is part of a corrupt enterprise," other than an image of a billboard in Moscow and the website of a Russian investment bank seeking the assets of Markus. *In re Markus*, 610 B.R at 85–86; Markus Opp. at 18. Moreover, the Bankruptcy Court correctly noted that these allegations were not supported by a declaration, or other evidence. *In re Markus*, 610 B.R at 86.

Accordingly, the Bankruptcy Court's decision to not hold an evidentiary hearing on the Turnover Motion is AFFIRMED.

### D.  LM/Protax Entities' Additional Requests

The LM/Protax Entities ask the Court to permit the transfer of over four million dollars—the amount turned over to the Foreign Representative pursuant to the October 2019 Order—to the escrow account of the Law Offices of Daniel A. Singer PLLC. LM/Protax Mem. at 22–23. They also request that the Court lift certain restraints imposed upon the LM/Protax Entities by the Bankruptcy Court. *Id.* Because the Court affirms the decision below, these requests are DENIED.

## CONCLUSION

For the reasons stated above, the October 2019 Order is AFFIRMED. The LM/Protax Entities' requests are DENIED. The Clerk of the Court is directed to close the case.

Dated: September 30, 2020
      New York, New York

_____
ANALISA TORRES
United States District Judge